It's a joy for us to be here, Judge Bacuse, Judge Backtrack and I. We were appointed to a circuit court, and it's nice to ride circuit now and then. So here we are riding circuit. First case this morning is the case of Roth v. CIR, case 18-9006. Mr. Roth, we're ready to hear from you. Good morning, Your Honor. John and Deanna Roth bring forward an important tax case involving an appeal from a decision of the United States Tax Court. This case involves statutory rights under the Internal Revenue Code, federal tax procedure, and touches on federal administrative law. At issue is a provision of the Internal Revenue Code enacted some 20 years ago in a comprehensive reform of the Internal Revenue Service and its operations. That statute known as the Internal Revenue Service Restructuring and Reform Act of 1998. One provision contained in that comprehensive reform was section 6751B. It addresses, Your Honor, only penalties. And it states, no penalty under this title shall be assessed unless the initial determination of such assessment is personally approved in writing by the immediate supervisor of the individual making the determination or such determination. If we take initial and we give it a very strict interpretation, wouldn't that mean that Agent Soss made the initial determination here and imposed a 40% penalty? I think that Roth would disagree on that, Your Honor. The position by Agent Soss, and in the appendix on page 6, she states that her analysis and computations are proposed. They're not determinations. They're not determinations on the revenue code. They cannot lead to an assessment. In the appendix on page 6, she states that they will go forward with a statutory notice of deficiency if necessary. And that's the mechanism, Your Honor, to create an assessment. It isn't the conduct of Agent Soss. She has no ability to do that. It has to be a statutory notice of deficiency. That action is irrevocably and intertwined with an assessment. You cannot escape the action of a proposed revenue agent at the initial beginning of the audit. And also, Your Honor, there's also, as we cite in our briefs, there is procedural rules in the Treasury regulations that say that the proposed action of a revenue agent is just that. It's proposed. It's not a determination. It's a recommendation to make a determination, but it's not such. Counsel, apart from the penalty itself, how are you aggrieved? How is your client aggrieved? Well, Your Honor, this is a classic bait-and-switch. So at the time that they got the notice of deficiency, they thought the amounts at issue were the tax and also one type of penalty, a negligence penalty. 20%, right? That has a defense. It has a reasonable basis defense. So what happens subsequently… Hold on, not so quick. You're saying that there's a defense to the 20% penalty that differs from the defense for the 40% penalty? Is that what you're saying? That's correct, Your Honor. And in what way does it differ? In the Pension and Protection Act of 2006, a statute that was enacted only one year before the tax year at issue here, Congress repealed the ability to get a reasonable basis defense for a gross valuation penalty. They removed that possibility. So now the new penalty that was assessed during the course of the judicial proceeding in the tax court is strict liability. There's no reasonable basis defense. It's a very different penalty and it's a very different modem of defense for the taxpayer going forward. Congress Chairman Grassley on the Finance Committee, he held hearings in the Pension and Protection Act of 2006 and did a comprehensive analysis and led to this decision to remove a reasonable basis defense from a gross valuation statement. So that's how the taxpayer was aggrieved here. Had you asserted a defense to the 20% penalty or had the time procedurally not arisen to do so? They relied on an appraiser. They also relied on a CPA in preparing their return. So they had that sufficient reasonable basis, Your Honor, to defend a negligence penalty going forward and were prepared to present that evidence. The age penalty prevents that because of the timing and the new basis for it that Congress changed. Let me ask you this. Section 6214A allows the tax court to redetermine the deficiency and additional penalties stated in the Notice of Deficiency. If your interpretation of the Notice of Deficiency as being the limit of what the IRS can claim as a penalty is true, doesn't it write this provision out of any meaning? Why would the tax court need jurisdiction to consider redeterminations of the deficiency if you're not allowed to redetermine the deficiency? No, Your Honor, that's a very different rule. That is giving the tax court jurisdiction to enter a deficiency. At issue here in 6751 was the statute aimed... The plain language of that section is to redetermine the deficiency. So it doesn't say... I mean, yes, it gives the tax court jurisdiction, but if the first Notice of Deficiency is etched in stone, you wouldn't need that jurisdiction because you can never change. That's what your argument is. Once they issue the Notice of Deficiency, that's it. They can't change it. This civil penalty cannot be added later during the judicial proceedings. That's our position. What do you rely on for that? Is there anything in the tax code? Is there anything in the case law? Yes. If you go back, Your Honor, to the legislative history and why this provision... I'm not asking about legislative history. We always start with the plain language. As a general rule, we don't really care what one particular legislator said, right? Your Honor, in Chai, the Second Circuit has found this statute to be ambiguous, and then they've gone to the legislative history. So at least that was the approach that that court went through. Well, do you agree it's ambiguous? I do. I do. And I think in order to understand and apply the statute, you have to understand the context in which Congress was trying to regulate. And Chai does a good job, Your Honor, really explaining the background of this statute. Your Honor, when you go back to the plain language... But Chai says you can amend, right? Chai, in passing, does. But, Your Honor, there's no analysis. There's no weighing of... Well, why do you say there's no analysis? They specifically relied on footnote 24 that referenced 6214 that Judge McHugh was asking you about. So how can you say that the discussion, part of its holding, was without analysis? It was. It may be analysis that you disagree with, but I thought the analysis was the reference to footnote 24. It's analysis that does not embrace the legislative history and really the intent of the statute. When you go back to the plain language, the terms used in the statute, initial, initial determination. That has a temporal aspect. That has something meaning at the beginning of this proceeding. Well, that's what she asked you about at the outset. Yes. Initial determination. Yes. And so you said that, well, that was just a proposal. And so there was then an appeal to Mr. Kawakami. That's correct. And his determination, one could say, by the same logic, was also tentative because of 6214. That Roths had the ability to appeal to the tax court. And it wasn't until what the tax court said that there was an initial determination, if what you had said at the outset of today's proceedings to Judge McHugh in response to her first question was accurate. So it actually would be the tax court, under your logic, that would make the initial determination. Correct. The tax court makes the redetermination and enters judgment subsequently on the deficiency. That's right. But that happens so far down. It's not the initial determination of the deficiency. It's a subsequent point in time, years later here, after the audit has gone on, after all the conduct that has happened, after all the possible settlements, not settlements, whether to impose this penalty, whether not, all the negotiations, Your Honor, all happened during the administrative proceedings. They don't happen during the judicial proceedings. So I assume if I asked you which part of the administrative proceedings would you say the initial determination, I assume you're going to say, well, the notice of deficiency, because that's the one place that they didn't assess a 40 percent penalty. But even the notice of deficiency was not determinative at all, because that was subject to an appeal to the tax court under 6214. But, Your Honor, that's the initial determination of the agency involved. Okay. That is the event. That's initial. It's at the very beginning. That's why the statutory notice of deficiency has so much weight. This court's decision in Fisher places importance on how that statutory notice of deficiency is expressed and what is in it. So that's the Ross position going forward. Looking back at 6751A-B, or I guess B-1, it talks about an assessment. No assessment shall be made. Well, an assessment doesn't happen until you're done in the tax court, does it? That's correct, Your Honor. You can't assess until you're done with the appeal and the dispute about what the amount of the tax is. That suggests that it's not fixed until we're through the tax court. That tie and that action of the tax court is only dependent on whether there's a petition that's filed. Right. If there's no petition that's filed... If you had not filed an appeal in the tax court, you would be sitting pretty at 20 percent, right? That would have been the only determination that was ever made. That was the initial determination that was made in that. But the tax courts received this change, this bait and switch, and a new imposition of a new type of penalty going forward because they exercised their rights to protest. Your Honor, also at issue was the value of this conservation easement. The government had taken the petition. It was without value. Absolutely no value, even though it was perpetual forever. Well, you agreed stipulated to what, $30,000? $30,000? It was $40,000 finally at the end of the proceeding. But you claim how much? I think it was over $900,000. Yeah, so I mean it's closer to zero than it is to $900,000. But still, Your Honor, they had no... The government took the position it was without value, and that's what was needed to be... Counsel, I don't want to eat into your rebuttal time, but I'm intrigued by how you could have such a substantial deviation between values on this conservation easement. There was no allegation of fraud. That's right, Your Honor. And so it struck me that there must have been some rational basis or appraisal or some way that that evaluation came through initially. Absolutely. There was an accredited appraiser who determined that the highest and best use of this property was for gravel mining. Gravel mining for gravel that could be used on roads in this part of the country. And there were some gravel mines there operating close to, in proximity to this. So that appraiser used that as a comparable. All right. That also was a very expensive trial for the taxpayer to take forward. Evidence of evaluation is very subjective. There's expert witnesses. That can be contentious and go on quite a while. The taxpayer made a decision to end the case, stipulate to a value so that it could be over. With that, I'll close with the balance. All right. Thank you. Good morning, Your Honor. I'm Bethany Hauser for the Commissioner of Internal Revenue. May it please the Court. The 40% gross valuation penalty here, it did indeed become a strict liability penalty. That's applicable to, the strict liability for part of that penalty is applicable to returns filed after Congress changed the law. And that includes the return here. Taxpayers were unnoticed before. They filed the initial return with that $970,000 valuation that the new strict liability provision applied. Counsel, doesn't that present a problem? A taxpayer, as a matter of due process, is presented with a deficiency in a penalty. And the taxpayer has to make a decision, shall I appeal or not? Shall I just pay this and get it over with? The taxpayer, for whatever reason, chose to appeal, which is their fundamental right. They can't be faulted for that. And next thing they know, they're not challenging a reasonable basis determination in 20%, which is what they undertook to contest, but are fighting a strict liability penalty over which the tax court has, under the statute, the sections that my colleague questioned about, a penalty which is of a different type than the due process notice that the taxpayer was told about. Well, the only distinction between the 20% penalty and the 40% penalty when it applies is whether there's a, is the amount of the difference in the assessment. That's why Congress changed the law. Well, Counsel says otherwise. He says it's not just, I asked him that specific question about whether it was just the amount. He says, no, it is the nature of the penalty. One can be challenged and the other is not. They're both under section 6662 of the Internal Revenue Code. And the difference between whether the 20% penalty applies if the value is more than 150% and the 40% penalty applies if it's more than 200%. And then the other distinction is that with the 20% penalty, the taxpayer can raise a reasonable cause defense. Congress removed that with the 40% penalty because they were seeing, essentially they thought when the evaluation was that egregiously misstated, that there was no need for an additional showing of reasonable cause. Well, but that's, that is the significant difference in terms of defending against the penalty. So when they're making the decision whether they should appeal, they think that they can fall within the defense to the 20% penalty. After they file the appeal, the IRS comes in and says, we're not going to, we're not going to fight with you about the 20% and we're going to go for the strict liability under the 40%. That's a bit of a bait and switch, isn't it? I think it's helpful to consider the tax court's role in the larger situation of tax procedure. The taxpayers actually had a third option here. They could have accepted that amount without appealing to the tax court and then sued for a refund in federal district court. In federal district court, the, and that would have given them the opportunity to contest the valuation issue as well in federal district court if they had not gone through a prior tax court proceeding on that issue. And in federal district court, the counsel for the United States could have come in and raised as a counterclaim the 40% penalty. Well, let me, let me question you more closely about that. Are you saying that at U.S. district court, the 20% penalty could be challenged without fear of it being converted into a 40% strict liability penalty in district court? The difference between the 20% penalty and the 40% penalty coming out of the gate is just the dollar value. I understand that, but that isn't my question. My question is, are you saying that at, had the taxpayer chosen the U.S. district court route, that he would have been assured of a maximum penalty of 20%? Not at all, Your Honor. I'm saying that the United, counsel for the United States could have raised the 40% penalty as a counterclaim in the United States. Well, then you might, you might not be able to do that if we were to follow some of the cases and say that you've got your last chances in, in the tax court proceedings. Once you're done there, you can't be changing the penalties. I'm sorry, if there's a tax court proceeding, you can't have a district court proceeding? Right, I understand that. Okay, so let me understand your question. As I read these cases, once you're done, whether they appeal or not, but once you're done there, your tax is set, and if you go to the district court, you've identified what you're fighting over. How would the IRS come in at that stage and say, oh, now we're doing a 40% penalty for the first time? In the district court, in a district court tax refund suit where the taxpayer has already paid the tax, it's his obligation to prove what the government owes to him. And for that reason, the government can raise a counterclaim in that scenario, and the court has to determine what is the true amount owed under the Internal Revenue Code from one party to the other. Well, if what you're saying is correct, aren't you basically chilling appellate, appellate rights of taxpayers? I'm sorry, I don't. Well, I don't think it's that complicated. I get a notice as a taxpayer saying I owe a deficiency of X plus a penalty of Y, and the penalty of Y is a 20% penalty. If I know that I can legitimately challenge the 20% penalty for whatever reason I as a taxpayer may have, I may be inclined to appeal. But if I open up the door to a risk of a 40% penalty that is non-discretionary as far as appeal is concerned, I am not going to go down that door. So this right of appeal becomes very illusory, it seems to me. The tax court proceeding is a proceeding de novo, and filing a petition in the tax court opens the door to any other issue concerning that tax year. Thus, 6214A gives the tax court the authority to determine in the first instance any issue involving that tax year. Now, the distinction between the matters in the notice of deficiency and new matter raised by the commissioner is that the notice of deficiency has a presumption of correctness. If an issue is raised as new matter in the tax court, the burden is on the commissioner to prove that the taxpayer owes it. How do you define initial determination under 6751B? We would define initial determination the way the Second Circuit did in CHI and the way the tax court did in the Grade 3 case, meaning the proposal or provisional determination by the examiner or the appeals officer or the line attorney with principal responsibility in the tax court when that determination is subject to supervisory rejection. The Second Circuit in CHI pointed out that this supervisory approval would be illusory if it was only required after it became ministerial. I was just going to ask you, based on your answer, in which of those three stages would you say the initial determination of the assessment took place? In this case, the tax court judge said, well, actually all three of these people, in fact, every person who's ever looked at this has said the 40% penalty should apply. But if you would like me to pick one, what we pick here is the one that initiated the process that led to the tax court decision, and that's the attorney's answer in the tax court. Really? So that surprises me. But let me ask you, I'm not going to ask you why I'm surprised, but what is your response to Mr. Walker's argument that, well, it can't possibly be, if you say it exactly like this, but it can't possibly be in the tax court because that's the appeal. The notice of deficiency was the initial determination of the assessment. That's the initial determination that triggers all of the review possibilities under 6214, but the determination was what is reflected in the deficiency. What's your response to Mr. Walker about that? A tax court proceeding is a de novo proceeding. It's not like a... That's an appeal, right? It's not like an appeal under the APA from a final agency determination. The notice of deficiency is the ticket to the tax court, but at that point all the issues for that tax year are on the table in the tax court, and the tax court does a de novo proceeding. That's what makes it possible to substitute the prepayment tax court proceeding for the postpayment district court refund proceeding. They're both de novo proceedings where both parties can bring in all the information they want. Let me tell you what my problem is intellectually with the argument that you're making about initial determination. Let's say in this appeal the three of us go into conference, and we have a heated discussion about which way the case should turn out. Judge Bachrach advances one view, Judge McHugh another, and I get a third. But ultimately we come to a decision and we issue it. As far as the two of you are concerned and the public in general, what took place in terms of our internal discussions really is irrelevant. The only thing that really matters is the written opinion, correct? Now, in the case of a taxpayer, what the tax staff or the IRS debated in the background is also, it seems to me, irrelevant. And what really matters to the taxpayer is that notice that the taxpayer receives in the mail that says you have a deficiency of X and a penalty of Y. Why should we assert any other kind of interpretation if all we do is add confusion by getting into a huge discussion about these background conversations that took place? The notice of deficiency is... The commissioner's initial position before CHI was that we didn't need to get into any discussion. That's not a position. That is a fait accompli as far as the taxpayer is concerned. He's faced, she or he are faced with a notice of what they owe and what the penalty is. They can elect, as you said, to pay it. They can elect to pay it, but if they pay it, that's not the end of the story. If they pay it, then they can bring a refund suit. Right, but they may not... In addition, on the face of the notice of deficiency itself, it indicates that the commissioner may assert additional amounts for that tax year. I don't see how you can do that. I just don't see it. I mean, if a taxpayer gets a notice in the mail that says, BACRAX, your deficiency on the tax return this year is X, and you have a penalty of Y, and you're saying that you can, and they pay it, that you can turn around and say, oh, we changed our mind, your penalty is Y plus 20? I guess what I would say, Your Honor, is that the tax system is designed to put more emphasis on the law as issued by Congress, and the plain language of that law, and the true facts. And under the true facts and the plain language of the law, the 40% penalty applies here. And the tax procedure system is designed to put more emphasis on the true facts and the language of the law as adopted by Congress than it is on the administrative proceedings. But the language as adopted by Congress refers to the initial determination. Yes. I mean, initial, it's very hard to square initial with any time during the tax court proceedings, including in the third amended answer. I mean, how is that initial? Because it's the... You admit it's not the first time. If I do it in the third amended answer, I'm representing the commissioner, and in my third amended answer, I say, you know what, we're going for the 40% penalty instead of the 20% penalty. Well, if that's the first time the 40% penalty was raised, it would be the initial determination. But let me ask you this, because you make that argument, and you look at GRAV or GRAVE or however you say it. We've been saying it, grave. Grave, okay, grave. GRAVE said it's attributable to a different portion of the taxpayer's underpayment. It's not that they took the penalty that they had initially announced in the deficiency, and they said, oh, we changed our mind. We're taking that to 40. They said, yeah, you've got this one at 20, but you know what, you've got this other issue over here for a different portion of your return, and we're going after you for 40 on that. So there, I guess you could say it's different, and it's an initial. But in this case, how is it initial if I've already said on this particular wrongdoing in your tax return, I'm holding you to a 20% penalty, but now on my third amended answer, I'm going for a 40. Tell me how to interpret the word initial to cover that. Because if it's the first time that the 40% penalty is raised, then it's the initial determination of the penalty. But it's not the first time. There's no, the absence of a 40% penalty in the notice of deficiency, or even in your hypothetical in the first and second amended, the first and second answers, is not, the absence of that penalty is not a negative determination. The penalty does not apply. And I will also say- Thoughts was the first time the 40% penalty was assessed, but then when the notice was given to the taxpayer for reasons I haven't been able to figure out, they went to 20. It looks like a clerical error, Your Honor. Everybody who looked at this on the merits felt that the 40% penalty should apply. And then you assess, you give them the notice of deficiency, and then after they appeal to the tax court, you say, oh, wait a minute. That same penalty that we said 20, now we want 40. And if they won on the merits of the valuation, there would have been no penalty at all, which is why they took the case to the tax court in the first place. Well, they stipulated to the valuation, right? They took this case as connected to the escrow case, which was decided by this court, and they were all being held together in the tax court. So they stipulated on the basis of the decision in the escrow case. I believe they were all the same appraisers. Thank you, Counsel. You've run a minute over, so we'll add a minute to your counsel's friend. Your friend, as we say up here at appellate practice from time to time. Thank you, Your Honor. Or your friend's time. I can't believe you said that. Thank you, Your Honor. That is not normally my characteristic. Sorry. I'll touch on a couple points, Your Honor, quickly. The government's position that it was the IRS counsel that made the determination during the tax court position, and that was the initial determination. It violates the temporal aspect and requirement of what is initial. Well, let me probe on that a bit. Is it your argument that the notice is the initial determination? Yes, Your Honor. And not some other backroom coffee shop conversation that colleagues may have had. Yes, Your Honor. If you go to the appendix, page 60, it's a reprint of the notice itself, and in the notice it states directly, if you want to contest this determination, and it uses the word determination in the text of it, then you can go to the United States Tax Court. So it's clear that in the notice it says it's a determination, and it's the government's position that it's a determination. But counsel states, hey, the taxpayer didn't have to do that. They could just pay the tax and file an action in the U.S. District Court for a refund on the penalty and contest it there. Your Honor, 95% of the cases go to the tax court. It's a prepayment jurisdiction. It's set up to handle, as you've got experts, national experts on the tax law. It's the court of choice by the vast majority of tax appeals to go to this prepayment. You can argue about it before you pay. And that's the way the system is set up. And compromises also are readily encouraged. Very few cases go to trial. A couple other points about – yes, sir. If nobody had challenged Ms. Sauce's determination, would that have been final? Ms. Sauce did not make a determination that could have led to an assessment. She says in her letter she has to go to a statutory notice of deficiency. That's not something she does. But if nobody had questioned whatever Ms. Sauce said, would that have been the ultimate determination? If they would have looked at Ms. Sauce's work product and the decision, we're going to follow that, we're going to do it, we'll issue the statutory notice of deficiency, that would have led to a different notice than the one that was issued here, yes, Your Honor. But that didn't happen. The one that was issued here is very specific. It's very direct. And it says what's at issue here. A couple of final points, Your Honor, is counsel cannot make the determination. The IRS lawyers do not make the determination. The commissioner does. And this position was articulated in the dissent of several of the judges in the tax court. Finally, in the prayer clause, in the amended answer, they state that they are, quote, amending the determination. There's no authority for amending a determination. That initial determination was made in the statutory notice. That's the determination the 6751B speaks to. Thank you. Is there any way to, and this is helping the innocent here, is there any way to correct clerical errors on notices given to the taxpayer? Let's say we assume the argument here that this was a clerical error. Was there a way to correct that? I'm not sure, Your Honor. I mean, the statutory notice of deficiency has its weight. It leads to the assessment. There are authorities to reissue one, but they're only limited, and part of the tax statute does address that, but I'm not sure the context of whether this type of purported blunder rises to that level. Thank you, counsel. The case is well argued and very helpful to the court. Thank you both. Counsel are excused. The case is submitted. We'll move on to the second case this morning, and that is Hedquist v. Walsh. Ms. Bramlett.